**ORIGINAL**

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

MICHAEL F. ALBANESE #9421
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
michael.albanese@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
OCT 24 2018
at __3__ o'clock and __05__ min. __P__ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. CR18-00167 HG |
| | ) | |
| Plaintiff, | ) | INDICTMENT |
| | ) | |
| vs. | ) | [21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C)] |
| | ) | |
| ERNEST BADE, (01) | ) | |
| YVONNE CAITANO, (02) | ) | |
| SHEENA STRONG, (03) | ) | |
| MARIE BENEVIDES, (04) | ) | |
| and | ) | |
| THERESA SALTUS, (05) | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3. Under the CSA and its implementing regulations:

a. Hydrocodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b). Hydrocodone, sometimes prescribed under brand names including Norco, Lortab, and Vicodin, was used to treat severe pain.

b. Oxycodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b). Oxycodone was available either alone as controlled release (OxyContin) and immediate release formulations (OxyIR, OxyFast), or in combination with other nonnarcotic analgesics such as aspirin (Percodan) or acetaminophen (Percocet). Oxycodone was used to treat moderate to severe pain.

c. Fentanyl was a generic name for a potent synthetic opioid that treats chronic severe pain. When legally prescribed, fentanyl was also used for anesthesia and came in the form of a transdermal patch or an injection. Fentanyl was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b).

d. Morphine was a generic name for a narcotic that treated moderate to severe pain. Morphine acts directly on the central nervous system to decrease the feeling of pain. Morphine was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b). Morphine was sold under the brand names of MScontin, Oramorph and Sevredol.

   e. Carisoprodol was classified as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c). Carisoprodol, sometimes prescribed under brand name Soma, was a muscle relaxant.

   f. Alprazolam was classified as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c). When legally prescribed, alprazolam treated anxiety and panic disorders. Alprazolam was a benzodiazepine, and was frequently sold under the brand names Niravam, Xanax, and Xanax SR.

  4. Medical practitioners, such as physicians and nurse practitioners, were authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they were authorized to prescribe controlled substances by the jurisdiction in which they were licensed to practice medicine and registered with the Attorney General of the United States. 21 U.S.C. § 822(b); 21 C.F.R. § 1306.03. Upon application by the practitioner, the Drug Enforcement Administration ("DEA") assigned a unique registration number ("DEA Registration Number") to each qualifying medical practitioner, including physicians and nurse practitioners.

  5. Chapter 21 of the Code of Federal Regulations, Section 1306.04, governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional

practice." Moreover, "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

6. All prescriptions for controlled substances were required: (a) to be "dated as of, and signed on, the day when issued"; (b) to "bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use; and (c) to bear "the name, address and registration number of the practitioner." 21 C.F.R. § 1306.05(a). "The refilling of a prescription for a controlled substance listed in Schedule II is prohibited." 21 C.F.R. § 1306.12(a); 21 U.S.C. § 829(a).

7. A prescription monitoring program ("PDMP") report contained prescription data for all Schedule II through V controlled substances dispensed by pharmacies in the State of Hawaii. Pharmacies were required by law in the State of Hawaii to report the patient's name, particular controlled substance and dosage dispensed, quantity dispensed, number of days supplied, prescribing physician's name, date the prescription was issued, dispensing pharmacy's name, and date dispensed.

## DEFENDANTS

8. Defendant ERNEST BADE ("BADE") was licensed by the State of Hawaii to practice medicine and maintained a DEA Registration Number. BADE was employed as the sole medical provider at Bade Medical Clinic, located at 260 Osorio Lane, Hilo, Hawaii.

9. Defendant YVONNE CAITANO ("CAITANO") was a resident of the State of Hawaii, and at all times relevant to this Indictment, the office manager at the Bade Medical Clinic and personal assistant to BADE. CAITANO was not a licensed medical care provider.

10. Defendant SHEENA STRONG ("STRONG") was a resident of the State of Hawaii, and at all times relevant to this Indictment, an office assistant at the Bade Medical Clinic. STRONG was not a licensed medical care provider.

11. Defendant MARIE BENEVIDES ("BENEVIDES") was a resident of the State of Hawaii, and at all times relevant to this Indictment, an office assistant at the Bade Medical Clinic. BENEVIDES was not a licensed medical care provider.

12. Defendant THERESA SALTUS ("SALTUS") was a resident of the State of Hawaii, and at all times relevant to this Indictment, employed as an office

assistant at the Bade Medical Clinic. SALTUS was not a licensed medical care provider.

## COUNT 1
### Conspiracy to Unlawfully Distribute and Dispense Controlled Substances
### (21 U.S.C. § 846)

13.  Paragraphs 1 through 12 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

14.  From a precise date unknown, but by at least May 2015 and continuing to on or about October 16, 2018, within the District of Hawaii, BADE and CAITANO, the defendants, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to knowingly and intentionally distribute and dispense Schedule II and IV controlled substances, namely, hydrocodone (Schedule II), oxycodone (Schedule II), morphine (Schedule II), fentanyl (Schedule II), carisoprodal (Schedule IV), and alprazolam (Schedule IV) outside the usual course of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(2).

### Purpose of the Conspiracy

15.  It was the purpose and object of the conspiracy for BADE and CAITANO to facilitate the operation of the Bade Medical Clinic by prescribing

controlled substances outside the usual course of professional practice and without a legitimate medical purpose.

### Manner and Means of the Conspiracy

16.  BADE maintained a Hawaii medical license and a DEA Registration Number. With these credentials, BADE wrote prescriptions for Schedule II and IV controlled substances, including hydrocodone, oxycodone, morphine, fentanyl, carisoprodol, and alprazolam.

17.  BADE commonly wrote prescriptions for an opioid, such as hydrocodone and oxycodone, in conjunction with carisoprodol (a muscle relaxant) or alprazolam (a benzodiazepine). These combinations were in high demand on the illicit pharmaceutical markets because a muscle relaxant or a benzodiazepine enhanced the "high" from the opioid. These combinations also carried a significantly increased risk of accidental overdose, and doctors typically avoided prescribing such combinations.

18.  CAITANO worked as BADE's office manager and personal assistant. CAITANO facilitated the distribution of prescriptions to patients by preparing the prescriptions for BADE's signature, giving the prescriptions to the patients, frequently where the patient did not actually see BADE for medical treatment, and, in some cases, flying to a different island to fill a prescription on behalf of a patient. CAITANO also assisted BADE in creating fraudulent medical records by,

among other things, administering fake urinalysis tests, where the "urine" specimens were never tested.

All in violation of Title 21, United States Code, Section 846.

COUNTS 2 THROUGH 41
Unlawfully Distributing and Dispensing Controlled Substances
(21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C))

19. Paragraphs 1 through 12 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

20. Beginning in or about May 2015, an undercover DEA investigator ("UC"), posing as a patient, began to receive prescriptions for Schedule II controlled substances from BADE. These prescriptions were provided without any legitimate medical purpose and outside the normal scope of professional practice.

21. The UC saw BADE for treatment on only two occasions, on or about May 27, 2015, and on or about June 20, 2018. On these occasions, BADE conducted a cursory physical examination of the UC and performed no diagnostic testing or urinalysis, and obtained no prior medical records. BADE provided morphine prescriptions to the UC for the following dates:

| Count | On or about date of Prescription | Controlled Substance[s] | "Patient" |
|---|---|---|---|
| 2 | May 27, 2015 | Morphine | UC |
| 3 | June 26, 2015 | Morphine | UC |
| 4 | July 24, 2015 | Morphine | UC |
| 5 | June 20, 2018 | Morphine | UC |
| 6 | July 31, 2018 | Morphine | UC |

22. From a precise date unknown, but by at least June 2015, BADE hired CAITANO as an office assistant. At varying points between June 2015 and June 2018, STRONG, BENEVIDES, and SALTUS began working for BADE on a regular basis as office assistants. STRONG, BENEVIDES, and SALTUS received no monetary compensation for the work they performed for BADE. CAITANO received, at most, $1,000.00 per month in cash. All four co-defendants were also patients of BADE.

23. From a precise date unknown, but by at least January 2017, BADE began to write prescriptions for controlled substances for many of his patients, including CAITANO, STRONG, BENEVIDES, and SALTUS, and other individuals known to the Grand Jury, referred to hereafter as B.B., W.B., and S.A. These prescriptions were without a legitimate medical purpose and outside the scope of professional practice.

24. On or about the dates specified below, within the District of Hawaii, BADE did unlawfully distribute and dispense, outside the usual course of professional practice and without a legitimate medical purpose, the controlled substances alleged below:

| Count | On or about date of Prescription | Controlled Substance[s] | "Patient" |
|---|---|---|---|
| 7 | February 9, 2017 | Oxycodone | CAITANO |
| 8 | February 9, 2017 | Hydrocodone | CAITANO |
| 9 | September 20, 2017 | Morphine | W.B. |
| 10 | September 20, 2017 | Oxycodone | W.B. |

| 11 | October 7, 2017 | Hydrocodone | BENEVIDES |
| --- | --- | --- | --- |
| 12 | October 7, 2017 | Oxycodone | BENEVIDES |
| 13 | October 7, 2017 | Hydrocodone | CAITANO |
| 14 | October 7, 2017 | Oxycodone | CAITANO |
| 15 | October 7, 2017 | Oxycodone | STRONG |
| 16 | October 7, 2017 | Oxycodone | SALTUS |
| 17 | October 7, 2017 | Fentanyl | B.B. |
| 18 | October 7, 2017 | Oxycodone | B.B. |
| 19 | October 7, 2017 | Oxycodone | S.A. |
| 20 | March 6, 2018 | Hydrocodone | BENEVIDES |
| 21 | March 6, 2018 | Oxycodone | BENEVIDES |
| 22 | March 6, 2018 | Hydrocodone | CAITANO |
| 23 | March 6, 2018 | Oxycodone | CAITANO |
| 24 | March 6, 2018 | Oxycodone | STRONG |
| 25 | March 6, 2018 | Oxycodone | SALTUS |
| 26 | March 6, 2018 | Fentanyl | B.B. |
| 27 | March 6, 2018 | Oxycodone | B.B. |
| 28 | March 6, 2018 | Oxycodone | S.A. |
| 29 | March 6, 2018 | Morphine | W.B. |
| 30 | March 6, 2018 | Oxycodone | W.B. |
| 31 | July 7, 2018 | Hydrocodone | BENEVIDES |
| 32 | July 7, 2018 | Oxycodone | BENEVIDES |
| 33 | July 7, 2018 | Hydrocodone | CAITANO |
| 34 | July 7, 2018 | Oxycodone | CAITANO |
| 35 | July 7, 2018 | Oxycodone | STRONG |
| 36 | July 7, 2018 | Oxycodone | SALTUS |
| 37 | July 7, 2018 | Fentanyl | B.B. |
| 38 | July 7, 2018 | Oxycodone | B.B. |
| 39 | July 7, 2018 | Oxycodone | S.A. |
| 40 | July 7, 2018 | Morphine | W.B. |
| 41 | July 7, 2018 | Oxycodone | W.B. |

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 42
### Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance
### (21 U.S.C. § 846)

25. Paragraphs 1 through 12 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

26. From a precise date unknown, but by May 2015 through on or about October 16, 2018, within the District of Hawaii, CAITANO and STRONG, the defendants, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to distribute and possess with intent to distribute Schedule II and IV controlled substances, obtained from Pharmacy A and Pharmacy B, namely, hydrocodone (Schedule II), oxycodone (Schedule II), morphine (Schedule II), fentanyl (Schedule II), carisoprodal (Schedule IV), and alprazolam (Schedule IV), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(2).

### Purpose of the Conspiracy

27. It was the purpose and object of the conspiracy for CAITANO and STRONG to obtain prescriptions from BADE for large amounts of controlled substances and further distribute these controlled substances to other individuals for profit.

## Means and Manner of the Conspiracy

28. From a date unknown, but by at least 2014, CAITANO and STRONG became patients of BADE. CAITANO and STRONG received monthly prescriptions for high quantities of Schedule II controlled substances (such as hydrocodone and oxycodone), frequently in combination with high quantities of Schedule IV controlled substances (such as carisoprodol or alprazolam). In addition, as office assistants, CAITANO and STRONG had access to prescriptions signed by BADE for other patients.

29. CAITANO and STRONG filled prescriptions obtained from BADE and thereby obtained a supply of controlled substances.

30. CAITANO and STRONG distributed the controlled substances to other individuals.

All in violation of Title 21, United States Code, Section 846.

## COUNT 43
### Conspiracy to Acquire and Obtain Possession of a Controlled Substance by Misrepresentation, Fraud, Forgery, Deception, and Subterfuge
(21 U.S.C. § 846)

31. Paragraphs 1 through 12 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

32. From a precise date unknown, but by January 2017 through on or about October 16, 2018, within the District of Hawaii, CAITANO, STRONG, BENEVIDES, and SALTUS, the defendants, knowingly and intentionally

combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to acquire and obtain possession of Schedule II and IV controlled substances, namely, hydrocodone (Schedule II), oxycodone (Schedule II), morphine (Schedule II), fentanyl (Schedule II), carisoprodal (Schedule IV), and alprazolam (Schedule IV), by misrepresentation, fraud, forgery, deception, and subterfuge, in violation of 21 U.S.C. § 843.

<u>Purpose of the Conspiracy</u>

33. It was the purpose and object of the conspiracy for CAITANO, STRONG, BENEVIDES, and SALTUS to fill prescriptions written by BADE for Schedule II and IV controlled substances.

<u>Manner and Means of the Conspiracy</u>

34. From a precise date unknown, but by at least January 2017, many pharmacies located in Hilo, Hawaii refused to fill certain prescriptions (namely, Schedule II controlled substances) written by BADE, out of concern that he wrote prescriptions outside the usual course of professional practice.

35. CAITANO, STRONG, BENEVIDES, and SALTUS agreed that one or more of them would fly to Maui once each month in order to fill prescriptions written by BADE. The person(s) flying visited two different pharmacies, Pharmacy A and Pharmacy B, whose identities are known to the Grand Jury, to fill

multiple prescriptions written by BADE, including those written for CAITANO, STRONG, BENEVIDES, SALTUS, W.B., B.B., S.A., as well as other individuals known to the Grand Jury. The person(s) who flew to Maui would then return to Hilo on the same day with the Schedule II and IV controlled substances.

36. In several cases, CAITANO, STRONG, BENEVIDES or SALTUS filled prescriptions for the same person at Pharmacy A and Pharmacy B on the same day.

37. Many of the prescriptions presented to pharmacists by CAITANO, STRONG, BENEVIDES, and SALTUS had a fraudulent Maui address.

38. When picking up prescriptions for W.B. and B.B., CAITANO, STRONG, BENEVIDES, and SALTUS falsely stated that they were relatives of W.B. and B.B.

All in violation of Title 21, United States Code, Section 846.

## FORFEITURE ALLEGATIONS

1. The allegations set forth in Counts 1-43 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 21, United States Code, Section 853.

2. The United States hereby gives notice that, pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Sections 841(a)(1) and/or 846, Defendants BADE,

CAITANO, STRONG, BENEVIDES, and SALTUS shall forfeit to the United States of America any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense.

3. If any of the property described in paragraph 2 above, as a result of any act or omission of the Defendants,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

//
//
//
//
//
//

the United States of America shall be entitled to forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p).

DATED: October 24, 2018, at Honolulu, Hawaii.

A TRUE BILL

/s/ Foreperson

_____
FOREPERSON, GRAND JURY

_____
KENJI M. PRICE
United States Attorney
District of Hawaii

_____
MICHAEL F. ALBANESE
Assistant U.S. Attorney

United States v. Ernest BADE, et al.
Indictment

CR18-00167 HG